The final case this morning, Melton v. Tippecanoe County. Mr. Weldy. Good afternoon, your honors. May it please the court, my name is Ron Weldy and I'm here on behalf of the appellate, James Melton. We have expressed a couple different reasons why we believe the dismissal of Mr. Melton's of LSA claims should be vacated and remanded back to the district court. The first of which is that the argument relied upon by Judge Springman to dismiss the claim, which is that there was no evidence in the record to support the fact that Mr. Melton was claiming to work over 40 hours, was an argument first raised in Tippecanoe County's reply brief on summary judgment. And I believe that there's really no question as to what the law is on that fact, and that is that any argument raised in a reply brief on summary judgment cannot be grounds for dismissing a case on summary judgment. And that's simply a matter of basic fairness. Obviously, the plaintiff would not have had a chance to respond to that reply argument in any fashion. And the arguments that were raised by Tippecanoe County in the summary judgment motion included arguments concerning actual construction knowledge of the hours worked, and that had to do with the fact that they said, hey, Mr. Melton certified the amount of hours he worked, and so he shouldn't be allowed to claim anything beyond what he certified. That comes around to the case law concerning actual constructive knowledge about the hours he worked. The plaintiff obviously put on evidence showing that the employer had constructive, if not actual, knowledge of the hours that he worked, and so defeated that argument. And Judge Springman actually agreed with that point. The other argument made by Tippecanoe County was that Mr. Melton did not avail himself of the dispute resolution process that they had set in place for these types of situations. They relied upon a case out of the Northern District of Illinois called Robinson, I believe, if I remember correctly off the top of my head. And in that situation, this case was distinguishable. I'm sorry, Roberts, my apologies, Roberts versus Advocate Healthcare. That case was distinguishable because in that case, the employer actually showed that their dispute resolution process had been utilized by numerous employees, and the hours that were being claimed by the employees were actually given to the employees. So a dispute resolution process that actually functions and works on behalf of the employees, if it's not utilized by the employees in the Northern District of Illinois judge's opinion, deserves credit. Here, there was no evidence that Tippecanoe County's dispute resolution process had ever been utilized by any employees to actually get time that had been worked and not paid corrected, so that makes it distinguishable. And once again, Judge Springman agreed with us on that point. It was a really rude awakening to see an argument in the reply brief that simply did not exist in the initial summary judgment briefing. And, you know, we filed a motion to correct errors, pointed it out to Judge Springman that, you know, this argument was never briefed initially in the summary judgment brief, and yet that's what you relied upon to grant summary judgment. And, you know, the case law is very, very clear. I mean, I gave a string cite to both Judge Springman and used the same string cite in my briefs, you know, before this court saying that it's simply not allowed. Well, what was missing? It seems that part of the problem was that he was working, what, 37 1⁄2 hours a week, something like that? Yes, 37 1⁄2 hours a week, correct, Your Honor. And then I guess you were claiming would he have to be working an extra 20 minutes each day? He's claiming that he was coming in between a half an hour and 45 minutes early each day and that he was working through his one-hour lunch break. Well, yeah, but the way I understood it, it was attributed to 20 minutes each day. And that's the way... And the court pointed out that even adds up to less than 40 hours. Correct, right. But the court also ignored the fact that there was evidence in the record in the form of the spreadsheet that Mr. Melton had approved that showed all of his time, okay, and it's definitive. His summary, right? Right, his summary of the hours he worked. And there's 29 weeks in here that show over 40 hours' work, and it's based upon not only coming in early, but also working through lunch hours, okay? Was he taking some kind of a course where he had to take some time off? That was at the very, very, very tail end of his employment, I think the last weekend after two weeks in question, and that led to his termination, and that was the subject of going all the way up to the Indian Supreme Court on an unemployment benefits claim. Where he lost? Yes, yes. So is he owed that $5,000, whatever it is, to pay it back? You know, Your Honor, that has been a very, very strange question, and quite frankly, unemployment benefit law, while I practice it in the state of Indiana, understanding how workforce development works and how they come up with the amounts and who owes what back is a mystery. There's not a lot of case law on it. There's not a lot of statutes on it, regulations. Well, how much did he get? I think it was around $5,000, but I don't want to be held to that number because I don't know. That's the figure I'm referring to. He went to the Supreme Court and said he was a good cause for getting... Yes, and quite honestly, I know that Tippecanoe County has put forth some arguments and some evidence that because of the fact that they're a public entity, that they don't pay in advance like regular private employers do, and quite frankly, I haven't been able to find any law that says that they're wrong. And so we've kind of left that question open to the court because, you know, I can't say that they're wrong. We're not worried about that here. I was just curious. You might have hit on that one. So, you know, I mean, the main crux of our argument is that, obviously, Judge Springman erred because she relied upon an argument that was first articulated in the reply brief. Secondly, as a matter of fact, in the record that was before Judge Springman, because Defendant Tippecanoe County had actually designated Mr. Melton's spreadsheet that he prepared in response to their interrogatories to say, hey, tell us what hours you worked, that there was actually evidence in the record before Judge Springman showing that he worked over 40 hours a week. You're saying that they had designated it? Absolutely. It was in the record. They had designated it as part of their initial. . . No, that's two different questions. They had designated it or it was in the record? They had designated it as an exhibit to their initial summary judgment briefing. Okay. And actually cited to it. Yes, Your Honor. Your point argues that it wasn't improper for them to argue in its reply brief that Melton failed to meet his burden with regard to the spreadsheet. That's why they were able to make the argument in the reply brief. Your Honor, for the first time on appeal, they claimed that the spreadsheet was inadmissible, and we pointed out that that was never raised below. Well, they say the initial motion for summary judgment put Mr. Melton on notice that the number of hours worked and whether he had been paid for those hours were at issue. Yes, and I completely disagree. You point to the sentence in their summary judgment briefing that says that, and this will be the first time that I've ever seen that sentence. They made other arguments. They made arguments that he had certified his time, and so he's not allowed to go beyond anything he's certified, i.e., an actual construction knowledge argument. They made arguments that they had a dispute resolution process. They did not argue that he could not prove that he worked 40 or more hours. If they would have argued that, we would have made a response to the argument, but it's simply not there. But there was also not a response. I can imagine a circumstance in which they argue that he's certified his time and so he can't go beyond that, and a response might be certified, shmertified, look, we've got evidence that he went beyond that, and that didn't happen either, right? Well, we argued that there was actual and constructive knowledge of more hours being worked, and so that defeated the whole certified argument. But, I mean, there was, you know, you don't, if somebody doesn't make an argument, you don't respond to it. And, quite frankly, I had no reason to anticipate that they were going to argue that when it was already in the interrogatories that he had worked over 40 hours a week and that he had been deposed and that had been discussed about his spreadsheet had been discussed in his deposition. So, you know, Rule 11 says you're not supposed to make arguments that you know there's material questions of fact. Obviously, he's claiming... Was that admission of some kind? What's that? Was it admission that that was correct somewhere? Admission that that was... I'm sorry, I'm not understanding your question, Your Honor. Well, you're... Whatever the spreadsheet it was, did they say that was accurate? Did they say it was accurate? Yeah. No, but, I mean... It was not any admission that that was accurate. That was something you submitted, right? Right, but it obviously raises a question of material fact. The plaintiff says one thing, of course they're going to say another. That's why we're in litigation. And you're not supposed to raise arguments on a summary judgment where there's a knowing question of material fact. And that was already presented in his interrogatories and discussed during his deposition. So I would have, you know, absolutely no reason to believe that an argument that there's a knowing question of material fact is going to be raised, and, you know, I'm not going to search for an argument. I don't use a crystal ball to figure out what is being argued on summary judgment. I respond to the arguments presented. Thank you, Your Honor. Thank you, counsel. Mr. Mason. Judges, may it please the court, I'm Doug Masson. I'm representing Tippecanoe County in this case. Tippecanoe County paid Mr. Melton what he claimed on his timesheets, and we believe that to be an accurate record of his work. He claims that the records are inaccurate, but he's not met his burden of providing specific evidence of unpaid overtime. Under the Anderson v. Mount Clemens case, where an employee challenges records, he has to establish the existence of uncompensated overtime, and that means time in excess of 40 hours, as a matter of just and reasonable inference. And we mentioned the Anderson v. Mount Clemens case. I should mention that the Supreme Court last week decided a case, Tyson Foods. It doesn't really change the analysis in this case, but it does discuss the Anderson case, and so I think the standards set forth in Anderson is still a good rule of law. I just wanted to let the court know about that case that came through. But if Mr. Melton shows that the county's records are unreliable, but shows 40 or less hours of time, he may have created an issue of fact, but it's not a material issue of fact until he gets it over 40 hours. So when Mr. Melton says that we didn't put him on notice that this was an issue in this case, it's not unfair with what we briefed in the initial motion to expect him to reply with evidence that sustains a finding that he actually had overtime hours at issue. First of all, it's a wages and hours case. This is FLSA. He's saying I worked over 40 hours for which I was not compensated. We argued in our initial brief we were entitled to rely on the records. We argued that his hours were not properly supported, so that's why we cited the spreadsheet. We did not cite the spreadsheet in support of a proposition that he worked the hours or that the spreadsheet was reliable in any way. The reason we cited it was to compare it against our records and show that it couldn't be correct. For part of the time he was there, there was a punch card system that they were implementing. That was not the official record of their time, but they would come in, they would punch in and punch out, and it had notes that the employee could make. So we took that and we showed that he punched in at 8 o'clock. There were some occasions when he punched in at 8 o'clock, punched out at 4.30, claimed the whole 8.5 hours for the day, put lunch as a note on this electronic record, got paid for the 8.5 hours on his official timesheet, but then if you go and look at his spreadsheet that he cited, now he's claiming 9.5 hours with no explanation. There's some cases, or at least there's one case, the Golden case, where there's a spreadsheet in that case that's unexplained. This is a district court case, so you're not bound by it. But the court in that case took a look at the spreadsheet and the plaintiffs had not provided any details or justification. They said, this doesn't meet the Anderson standard. You have improved your damages by a just and reasonable inference. So as a general rule, Mr. Melton claimed that he came in early and he worked through lunches. He says he needed 20 minutes to get equipment ready for his crew on field days, and he claims to have worked through most or all of his lunches. But like I said, he never provided the degree of specificity necessary to carry his burden. If you look at this court's case of Brown v. Family Dollar, that was one where the court looked at it and said summary judgment was not appropriate because even though there weren't meticulous records of the plaintiffs, it could be reconstructed. It could be that there was enough detail because in that case you had one employee who was the only one who could open and close the store. You knew when the store was open and closed. You had testimony about duties and how long those duties took to open and close, and evidence that the timesheets in question could not have captured those opening and closing times. So that was enough evidence to provide the detail that Anderson requires. This case is more like Turner v. Saloon, which this court also decided. In that case, Turner had asserted that his employer directed him to alter his time records to make him ineligible for overtime pay. And he said he was denied, quote, a substantial amount of money, and he said he had information of overtime, but he didn't place it in the record. But his assertions were contradicted by records tending to show that he was either paid overtime or had hours below the threshold. In that case, the Seventh Circuit decided that there really wasn't anything but his assertion, and that was insufficient to meet that just and reasonable standard of Anderson v. Mount Clemens. There's also the district court cases we cite in our brief, Golden, Brand, and Joiner, and they use calculations like maybe once or twice a month if I was lucky I got to take a lunch, I worked probably three years of lunches over four years, estimates like 70% to 75% of the time lunch was interrupted. And that's the sort of estimate that was impermissible in those cases. And if you look at that spreadsheet, it says on the spreadsheet, plaintiff states that he would arrive at work between 7.30 to 8 a.m. per his normal routine. However, plaintiff cannot recall his exact start time for each day he worked. Plaintiff is approximating his start time and the hours he worked each week. Those are the kinds of estimates that have been found impermissible in other cases. So even if the district court had made a mistake by not looking at the spreadsheet, I think when you look at the spreadsheet, you find that it doesn't have the sort of level of evidence required to make an FLSA claim. But I don't think the district court was required to look at that spreadsheet. He didn't designate it. Before the district court's obligated to look at a party's assertion, the party's required to designate the evidence under the Packer v. IU case decided last year. That assertion has to be in conjunction with a cogent argument about why the assertion's material. So you don't have that from the plaintiff. And our designation of it, as I said, was to point out that it was flawed and couldn't be relied on. And the reason we were pointing that out was to fully inform the district court of what their assertions were. And we tried to do that by saying, okay, he's got this spreadsheet. He's saying these things about his hours, but they just don't hold up. And so I think it was incumbent on him under the Anderson case to come back and say, yes, we're challenging their records, so they can't rely on it, and here's my overtime cases. Was there some rule that you can't work through the lunch hour or something? The specific problem that got him fired was that he wanted to take some classes. And so in May of the year, and it's been so many years I'm sort of blanking on what it was, he sent his supervisor an email saying, hey, can I take these classes? I'll come in early and work through lunch to make up the time I missed from the classes. And his supervisor said, it's fine if you take the classes, but you can't work through lunch or come in early. The elected official, the surveyor, has traditionally found that that's tough to track, and we don't want to pay based on that, so I don't want you doing that. And so then a couple months later when he took the classes, he, despite the instructions, went ahead and worked through lunch and came in early. I think if you look at his records, he had worked through some lunches, or at least he had claimed the lunches, and he was paid for it. And so that wasn't the basis of his termination. He was actually paid then? Yeah. I mean, if you look at what we've cited, I think it's probably page 20, 21 of our initial motion for summary judgment, we have a little grid that shows where he punched in, punched out for eight and a half hours, didn't claim lunch, got paid for eight and a half hours, made a little note on the electronic record-keeping thing that said lunch. So I think the inference is that he worked through lunch and got paid. I think if you ask the surveyor at the time, well, I'm sorry he's passed away, but I think the surveyor at the time, the policy would have been that, no, we don't want people working through lunches, but I'm not sure how consistently that was enforced. The thing that got him in trouble was just the specific exchange with his supervisor in May, where he said, no, don't make up time for these classes. And he went ahead and did that, and he was terminated. So that's why it was a legitimate termination. But was there any time by adding in lunch hours that he worked over 40 hours? I don't believe that's in the record, Your Honor. Well, that's what it says. I mean, according to our records, absolutely not. If you take his spreadsheet as legitimate and sufficient proof, he's alleged in his spreadsheet quite a number where he says he worked over 40. I just wonder about that, where he was actually paid for working part of the lunch hours. Yeah, I mean, when he worked through lunch and it was on our records, he got paid for it. Well, that's every once in a while. That wasn't a consistent? Yeah, I would characterize it as that. I mean, we're talking about whether it's ever added up to more than 40 hours. Right, and I don't believe it did. Certainly not according to the records we kept. I feel like we were entitled to rely on those. Thank you, counsel. Thanks to both counsel. The case will be taken under advisement, and the court's in recess.